# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NATIONAL CONSUMER COOPERATIVE BANK,** | : | No. 3:10cv434 |
| Plaintiff | : | (Judge Munley) |
| v. | : | |
| **MORGAN STANLEY & CO., INCORPORATED, f/k/a Morgan Stanley DW, Inc.,** | : | |
| Defendant | : | |

## MEMORANDUM

Before the court is defendant's motion to dismiss. Having been fully briefed, the matter is ripe for disposition.

**Background**

This case arises out of a loan agreement between Plaintiff National Consumer Cooperative Bank ("NCB") and the Murray Insurance Agency of Scranton, Pennsylvania, owned by Brian Murray. (Complaint (Doc. 1) (hereinafter "Complt.") at ¶ 1). Plaintiff alleges that Brian Murray entered into a pledge agreement with NCB to secure a loan on March 7, 1997. (Id. at ¶ 8). As collateral for this loan, Murray assigned to NCB and granted to NCB a security interest in the contents of two brokerage accounts he held with defendant, which at the time was operating as Dean Witter Reynolds, Inc. (Id.). The pledge agreement Murray signed required that the market value of his accounts with defendant be at minimum

$1,000,000.00. (Id. at ¶ 9).

On March 27, 1997, NCB sent a letter to John Egan of Dean Witter Reynolds in connection with this pledge agreement. (Id. at ¶ 10). This letter addressed the pledge agreement and terms and restrictions that pertained to Murray's accounts with Defendant. (Id.). The letter advised defendant that Murray could transfer property freely from the accounts as long as the value of the accounts did not fall below $1,000,000.00. (Id. at ¶ 11). If such transfers would reduce the value of the accounts to less than $1,000,000.00, however, plaintiff was required to obtain NCB's written consent. (Id.). The letter also required defendant to "note the existence of NCB's security interest with respect to these accounts in its books and records" and "promptly" to "notify NCB of any attempt to transfer the accounts or reduce the value of the accounts below One Million and No/dollars ($1,000,000) of which it has knowledge." (Id. at ¶ 12). Egan, manager of the branch where the accounts were administered and maintained, acknowledged and agreed to the terms of the March 27, 1997 letter on defendant's behalf. (Id. at ¶ 13).

NCB and Murray Insurance renegotiated the terms of the loan agreements in 2004. (Id. at ¶ 14). As a result of these negotiations, Murray Insurance was required to maintain $400,000 in the accounts rather than $1,000,000. (Id.). On March 1, 2004, NCB sent a Control Agreement and Acknowledgment of Pledge and Security Interest to Morgan Stanley (the "Control Agreement"). (Id.). The Control Agreement provides that Murray has granted NCB: "a pledge and security interst in

2

$400,000 of [Murray's] interest in" the accounts that defendant maintained in Murray's name, as well as their assets. (Id. at ¶ 16). The Control Agreement further "notified" Morgan Stanley of NCB's security interest in those accounts and provided that "[d]ividends in cash, stock, stock splits and other proceeds are not to be paid to anyone other than to [NCB] until and unless you receive further written notice from [NCB]." (Id.).

Morgan Stanley acknowledged receipt of the Control Agreement on August 13, 2004. (Id. at ¶ 17). This acknowledgment stated that Morgan Stanley would "mark our records, by book-entry or otherwise, to indicate the pledge of, and [NCB's] security interest in, the Collateral." (Id.). Morgan Stanley also stated that it had "identified on our books and records the Collateral as being pledged to [NCB]." (Id. at ¶ 18). The Control Agreement also required Morgan Stanley "not to effect any transfer of [Murray's] interest in any of the Collateral without [NCB's] prior written consent." (Id. at ¶ 19). If defendant received any further written notice from NCB, it would "hold all the Collateral and all dividends, distribution, and other proceeds relating to the Collateral . . . subject to [NCB's] written instructions." (Id.). Morgan Stanley would "comply with all written instructions originated by [NCB] concerning the Collateral without further consent by [Murray]." (Id.). John Egan again signed this agreement. (Id. at ¶ 20).

On October 22, 2009, NCB received a statement with respect to one of the accounts covered by the Control Agreement stating that as of January 31, 2009, the

assets in the account had a value of $43,609.69. (Id. at ¶ 32). Statements connected to that account reveal that on June 1, 2006, $400,000 was withdrawn from the account by way of a check. (Id. at ¶ 33). On May 31, 2006, the assets in the account totaled $413,304.62. (Id.). Following that withdrawal, the account contained $13,457.38. (Id.). Since that withdrawal, the funds in the accounts have never total more than $400,000, as required by the pledge and control agreements. (Id. at ¶ 34). NCB never consented in writing or otherwise to this transfer. (Id. at ¶ 35).

Plaintiff filed the instant complaint on February 26, 2010, raising three causes of action. Count I alleges that defendant violated the control agreement by allowing Murray to empty the accounts of less than $400,000 without obtaining plaintiff's written permission. This action, plaintiff contends, constituted a breach of contract. Count II alleges negligence by the defendant in failing to mark records indicating NCB's security interest in the accounts and allowing Murray to transfer funds without obtaining plaintiff's permission. Count III claims defendant committed a breach of fiduciary duty by not complying with plaintiff's instructions in the control agreement.

After being served with the complaint, defendant filed the instant motion to dismiss. The parties then briefed the issues, bringing the case to its present posture.

**Jurisdiction**

Plaintiff is a District of Columbia banking institution with its principal place of

business in Washington, D.C. Defendant is a Delaware Corporation with its principal place of business in New York State. The amount in controversy exceeds $75,000. As such, the court has jurisdiction pursuant to 28 U.S.C. § 1332. The court is sitting in diversity, and therefore the substantive law of Pennsylvania shall apply. Chamberlain v. Giampapa, 210 F.3d 154, 158 (3d Cir. 2000) (citing Erie R.R. v. Tompkins, 304 U.S. 64, 78 (1938)).

**Legal Standard**

Defendant seeks dismissal of the complaint pursuant to both Federal Rule of Civil Procedure 12(b)(6) and Federal Rule of Civil Procedure 9(b). When a defendant files a motion pursuant to Rule 12(b)(6), all well-pleaded allegations of the complaint must be viewed as true and in the light most favorable to the non-movant to determine whether "under any reasonable reading of the pleadings, the plaintiff may be entitled to relief." Colburn v. Upper Darby Township, 838 F.2d 663, 665-66 (3d Cir. 1988) (citing Estate of Bailey by Oare v. County of York, 768 F.3d 503, 506 (3d Cir. 1985), (quoting Helstoski v. Goldstein, 552 F.2d 564, 565 (3d Cir. 1977) (per curium)). The court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citations omitted). The court does not have to accept legal conclusions or unwarranted factual inferences. See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d

5

902, 906 (3d Cir. 1997)).

The federal rules require only that plaintiff provide "'a short and plain statement of the claim showing that the pleader is entitled to relief,'" a standard which "does not require 'detailed factual allegations,'" but a plaintiff must make "'a showing, rather than a blanket assertion, of entitlement to relief' that rises 'above the speculative level.'" McTernan v. City of York, 564 F.3d 636, 646 (3d Cir. 2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555-56 (2007)). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). Such "facial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." Id.

Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). Under the rule, "plaintiffs must plead with particularity 'the circumstances of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior." Lum v. Bank of America, 361 F.3d 217, 223-224 (3d Cir. 2004) (quoting Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 791 (3d Cir. 1984)). "Plaintiffs may

6

satisfy this requirement by pleading the 'date, place or time' of the fraud, or through 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" Id. at 224. In addition, a plaintiff must allege "who made the representation to whom and the general content of the misrepresentation." Id.

**Discussion**

Defendant urges dismissal on several grounds. The court will address each in turn, as appropriate.

### i. Breach of Contract

Defendant argues that plaintiff fails to state a claim for breach of contract for two reasons. First, Morgan Stanley contends that plaintiff has not pled the existence of a valid control agreement under the Uniform Commercial Code, as adopted by Pennsylvania and thus defendant had no duty to prevent Murray from accessing the accounts. Next, defendant argues that plaintiff has not alleged the existence of any valid consideration, and thus has not alleged the existence of a valid contract of any kind under Pennsylvania law. The court will address each of these arguments in turn.

In terms of the alleged "control agreement," the Pennsylvania code provides that "[a] purchaser has 'control' of a security entitlement if: (2) the securities intermediary has agreed that it will comply with entitlement orders originated by the purchaser without further consent by the entitlement holder." 13 Pa. C.S. § 8106(d)(2). Defendant agrees that it is a securities intermediary within the meaning

7

of the law.  See 13 Pa. C.S. § 8102 (defining "securities intermediary" as "(1) a clearing corporation; or (2) a person, including a bank or broker, that in the ordinary course of its business maintains securities accounts for others and is acting in that capacity.").  An "entitlement order" is "[a] notification communicated to a securities intermediary directing transfer or redemption of a financial asset to which the entitlement holder has a security entitlement." 13 Pa. C.S. § 8102.

The complaint alleges that the bank provided defendant with two agreements related to the accounts here in question.  On March 27, 1997, Frances Nwachuku, an Assistant Vice President at NCB, wrote John M. Egan "to confirm certain terms and restrictions pertaining" to the accounts.  (Exh. B to Complt.).  The letter noted that "the contents of the accounts have been pledged to the National Cooperative Bank," and that this pledge "confers rights on NCB and imposes certain restrictions on Mr. Murray."  (Id.).  Murray could make trades in the account, but only in investment grade securities and only until NCB notified defendant of a default on the loan agreement.  (Id.).  Murray could transfer money from the accounts, but only if the balance of the account remained more than $1 million.  (Id.).  Any transfers that would reduce the accounts' balances to less than that amount "must be done with NCB's written consent."  (Id.).  Defendant was required to provide NCB with "written confirmation of all trades" and provide at minimum a quarterly account statement. (Id.).  Defendant also had to provide plaintiff with a valuation on the accounts within two days of plaintiff's request.  (Id.).  If NCB notified defendant that a default on the

8

loan agreement with Murray had occurred, defendant would "be authorized, upon the Bank's request, to deliver to NCB up to One Million and No/Dollars ($1,000,000) of property." (Id.). NCB notified defendant that Murray had "agreed that the account cannot be liquidated, terminated, transferred to another institution or otherwise modified without the written consent of NCB." (Id.). Defendant also promised to note NCB's security interest on its account records. (Id.). Though NCB agreed that defendant could not "be responsible for any decline in the market vlaue of the accounts or any actions Mr. Murray takes which reduces the value of the accounts below One Million and No/Dollars," defendant also agreed "promptly" to inform "NCB of any attempt to transfer the accounts or reduce the value of the accounts below" $1 million. (Id.). John Egan signed the agreement on March 31, 1997.

On March 1, 2004 plaintiff sent defendant a "Control Agreement and Acknowledgment of Pledge and Security Interest." (Exh. C to Complt.). That document, allegedly signed by John Egan,[1] informs defendant of plaintiff's $400,000 security interest in Murray's accounts with defendant. (Id.). The letter states that "[d]ividends in cash, stock, stock splits and other proceeds are not to be paid to anyone other than to the Lender until and unless you receive further written notice from Lender." (Id.). The letter also directed defendant to provide plaintiff with copies

---

[1] Defendant disputes that this is actually Egan's signature, claiming that the signature on this agreement does not match that on the first. The court finds that exploring the question of whether this signature was forged is not appropriate at this point in the litigation. The issue may of course be revisited in and after discovery.

9

of "any and all statements, reports, and other information relating to the Collateral" to plaintiff. (Id.). The agreement was to remain in force until plaintiff notified defendant of a change. (Id.). Egan's purported signature acknowledged receipt of the letter and promised to mark the defendant's records to indicate the plaintiff's security interest. (Id.). Defendant also acknowledged that the collateral had been kept on defendant's books in Murray's name, that NCB's interest in the property had been noted, that no one else had an interest in the property, and that there were no claims against the property except to plaintiff. (Id.). The defendant also agreed "not to effect any transfer of the Owner's interest in any of the Collateral without Lender's prior written consent." (Id.). Finally, "should we receive further written notice from Lender, we will hold the Collateral and all dividends, distributions, and other proceeds relating to the Collateral (whether in cash, securities or other property) subject to Lender's written instructions. We will comply with all written instructions originated by Lender concerning the Collateral without further consent by the Owner." (Id.). A party added an exception to these instructions: "will copy all requests to account owner." (Id.).

The parties disagree over whether these writings created a valid control agreement under Section 8106(d)(2). Defendant argues that no valid control agreement existed because Morgan Stanley did not agree to comply with entitlement orders in these agreements, and thus did not form a control agreement with the plaintiff. The agreements, defendant insists, do not contain any language pertaining

10

to entitlement orders. The purpose of those agreements was to notify Morgan Stanley of restrictions on Murray's ability to alienate the accounts, not to give NCB the power to direct transfer from the accounts without Murray's consent. Plaintiff contends that language in the agreement directs Morgan Stanley to transfer property from the accounts at plaintiff's request and without further consent from Murray. As such, plaintiff argues, the agreement obliges defendant to comply with an entitlement order and a valid control agreement exists.

The court agrees with the plaintiff. Defendant cites to no case law which establishes that the words "entitlement order" must be contained in the writing to create a valid control agreement, and thus the court rejects that portion of defendant's argument. Second, as demonstrated above, both agreements contain language which create entitlement orders. They allow the plaintiff to direct a transfer of property in the account to itself without first obtaining consent from the account holder, and which obliges the defendant to comply with such a request. The first agreement, for instance, requires the defendant to "deliver" up to $1 million in securities to plaintiff at the plaintiff's request, and does not provide any means for Murray to object. The second agreement provides that defendant must "comply with" all of plaintiff's "written instructions" regarding the "collateral" without consent from the account holder. Thus, plaintiff alleges that the writings create a control agreement between the parties pursuant to 13 Pa. C. S. § 8106(d)(2) and the court will deny the motion on these grounds.

11

The defendant further argues, however, that plaintiff has not alleged that Morgan Stanley failed to comply with any entitlement order and thus did not breach any duty contained within the control agreement. Defendant maintains that the only duty required of Morgan Stanley under such an agreement is the duty to comply with entitlement orders. Since plaintiff's allegation is that defendant failed to comply with the agreement's requirement that no money be distributed from the account without plaintiff's approval, plaintiff cannot make out a claim that defendant violated the control agreement. Plaintiff responds that its claim here is not that defendant failed to comply with an entitlement order, but that defendant failed to comply with the terms of the control agreement by allowing Murray to transfer funds from the account without notifying the plaintiff.

The court finds that plaintiff has alleged that defendant failed to comply with the terms of the control agreement. The agreement, as explained above, required defendant to notify plaintiff when Murray sought to transfer funds from the account if that transfer would deplete the account below a certain amount. The complaint alleges that defendant failed to provide the notice required by the control agreement.

The parties also dispute whether plaintiff has alleged the existence of a common-law contract. Defendant contends that the alleged contract was not supported by consideration because there was no bargained-for exchange between the parties, and that there is no allegation that Morgan Stanley benefitted from the agreement or that NCB suffered a detriment. As such, no contract existed.

12

Under Pennsylvania law, parties create a contract when "the parties reach mutual agreement, exchange consideration and have outlined the terms of their agreement." Greene v. Oliver Realty, Inc., 1193 (Pa. Super. Ct. 1987). A breach of contract claim exists when a plaintiff pleads: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." Corestates Bank, N.A. v. Cutillo, 732 A.2d 1053, 1058 (Pa. Super. Ct. 1999). Defendant contends that no contract exists because there was no consideration for the contract. "It is well established that consideration confers a benefit upon the promisor or causes a detriment to the promisee." Dahar v. Grzandiel, 599 A.2d 217, 219 (Pa. Super. Ct. 1991). The terms "'benefit' and 'detriment' are used in a technical sense in the definition, and have no necessary reference to material advantage or disadvantage to the parties." Stelmack v. Glen Alden Coal Co.,, 14 A.2d 127, 128 (Pa. 1940).

Here, plaintiff alleges offer, acceptance and consideration for the contract. Schreiber v. Olan Mills, 627 A.2d 806, 808 (Pa. Super. 1993). Plaintiff allegedly sent the agreement, which laid out terms by which defendant was to protect plaintiff's security interest in the funds in Murray's account. Defendant's agent signed this agreement and returned it to the plaintiff. Plaintiff has thus clearly alleged an offer and acceptance, which defendant apparently does not dispute. Defendant disputes that consideration existed for the agreement, contending that plaintiff does not allege that Morgan Stanley benefitted from the agreement or NCB had a detriment. The

13

court disagrees. Under the agreement, NCB agreed to allow its security interest to remain in Murray's account with defendant in exchange for a promise that defendant would notify it if Murray sought to alienate any portion of that security interest. At the same time, in exchange for agreeing to monitor Murray's use of the account and report that use to plaintiff, defendant was able to keep the security (either $1 million or $400,000) in an account it maintained as part of defendant's business. Since both sides received a benefit and detriment, there was consideration for the agreement. The court will deny the motion on these grounds.

Defendant also argues that plaintiff cannot prevail on its breach-of-contract claim because the 1997 contract contains an "exculpatory clause" that prevents liability on defendant's part. Under Pennsylvania law, three conditions must be met before an exculpatory clause can be valid: "First, 'the clause must not contravene public policy . . . Second, 'the contract must be between persons relating entirely to their own private affairs . . .'; and Third, each party must be a free bargaining agent to the agreement so that the contract is not one of adhesion.'" Tayar v. Camelback Ski Corp., 957 A.2d 281, 287 (Pa. Super. Ct. 2008) (quoting Topp Copy Products, Inc. v. Singletary, 626 A.2d 98, 99 (Pa. 1993)). When a court interprets such language, certain standards apply: "1) the contract language must be construed strictly, since exculpatory language is not favored by the law; 2) the contract must state the intention of the parties with the greatest particularity, beyond doubt by express stipulation, and no inference form the words of general import can establish

14

the intent of the parties; 3) the language of the contract must be construed, in cases of ambiguity, against the party seeking immunity from liability; and 4) the burden of establishing immunity is upon the party invoking protection under the clause." Topp Copy, 626 A.2d at 99.

The clause, contained in paragraph nine of the 1997 letter, states that "NCB agrees that [Morgan Stanley] shall not be responsible for any decline in market value of the accounts or any actions Mr. Murray takes which reduces the value of the accounts below One Million and No/Dollars ($1,000,000)." Defendant contends that this clause excuses Morgan Stanley from liability for Murray's actions. Plaintiff insists that the clause is unenforceable.

The court finds that the clause, construed strictly, does not apply to this situation, even if it is valid. The purported exculpatory clause applies in two situations: a decline in market value that reduces the accounts' value to less than one million dollars or actions by Murray that similarly reduce the value of the accounts. As to the first situation, the claim is not that the market value of the account declined, leaving the value less than at the market's height. Thus, that portion of the clause is inapplicable. As to the second exclusion, while the value of the account clearly declined because Murray removed money from the fund, the court reads plaintiff's claim against defendant to be that Morgan allowed these withdrawals without notifying plaintiff, as required by the agreement. Presumably, plaintiff's alleged injury came because Morgan Stanley did not notify plaintiff of the

15

withdrawal, preventing plaintiff from acting to prevent the loss of the pledged funds. If defendant had notified plaintiff of these withdrawals, then the injury would be solely a result of Murray's actions and the exculpatory clause would apply. Since the alleged injury is a result of defendant's failure to act, however, the clause does not apply and defendant can be liable. The court will deny the motion on these grounds.

### ii. Gist of the Action Doctrine

The defendant also argues that the gist of the action doctrine bars plaintiff's claims for negligence and breach of fiduciary duty. Under this doctrine a plaintiff may not plead a tort action as a means of stating a breach of contract action. If a party brings a claim that "arises solely from the contract between the parties, where the duties allegedly breached were created and grounded in the contract, where liability stems from the contract, or where the tort claims essentially duplicates a breach of contract claim or the success of which is wholly dependent on the contract," the claim is barred under the doctrine. eToll Inc. v. Elias/Savion Advertising, Inc., 811 A.2d 10, 19 (Pa. Super. Ct. 2002) (internal citations and quotation marks omitted).

Here, the plaintiff's claims for negligence and breach of fiduciary duty arise solely from the contract between the parties. Under Pennsylvania law, "[a] *prima facie* negligence claim requires the plaintiff to show that: (1) the defendant had a duty to conform to a certain standard of conduct; (2) the defendant breached that duty; (3) such breach caused the harm in question; and (4) the plaintiff incurred

16

actual loss or damage." Krentz v. Consol Rail Corp., 910 A.2d 20, 27 (Pa. 2006). In Pennsylvania, a claim for breach of fiduciary duty exists when a plaintiff alleges "(1) That the defendant negligently or intentionally failed to act in good faith and solely for the benefit of plaintiff in all matters for which he or she was employed; (2) That the plaintiff suffered injury; and (3) The defendant's failure to act solely for the plaintiff's benefit was a real factor bringing about plaintiff's injuries." Baker v. Family Credit Counseling Corp., 440 F. Supp. 2d 393, 414-415 (E.D. Pa. 2006); citing Pa. SSJI § 4.16. The duties that defendant owed plaintiff all arose from the contractual relationship between the parties, whether that duty was to transfer money from the fund only with plaintiff's approval or to notify plaintiff of the status of the security. Those duties were created by the contractual relationship between NCB and Morgan Statnley. Thus, any breach of the defendant's duty in this instance would likewise be a breach of the contract.

The plaintiff argues that the claims are not barred by the doctrine because the negligence claim is based in part on the bank's duty to maintain proper records. This duty, plaintiff insists, is a duty founded not in the contract between the parties, but in social and legal policies. The court disagrees. As described above, the agreement between the parties required defendant to note the plaintiff's interest in the security on its records and to maintain certain records, as well as to keep plaintiff informed of the status of the security. Failing to meet these obligations breaches a duty imposed by the contract, and is covered by the doctrine. As such, the plaintiff's

17

negligence claim is barred by the gist of the action doctrine, and the court will grant the motion on this point and dismiss plaintiff's claims for negligence and breach of fiduciary duty. Defendant raises other grounds for dismissing this portion of the plaintiff's claim. Since the court has concluded that those counts should be dismissed, the court will not address those arguments.

**Conclusion**

For the reasons stated above, the court will deny the defendant's motion as it relates to plaintiff's breach of contract claims and grant the motion with respect to plaintiff's claims for negligence and breach of fiduciary duty. An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **NATIONAL CONSUMER COOPERATIVE BANK,** | : | No. 3:10cv434 |
| Plaintiff | : | (Judge Munley) |
| v. | : | |
| **MORGAN STANLEY & CO., INCORPORATED, f/k/a Morgan Stanley DW, Inc.,** | : | |
| Defendant | : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## ORDER

**AND NOW**, to wit, this 8th day of October 2010, defendant's motion to dismiss is hereby **GRANTED** in part and **DENIED** in part, as follows:

1. The motion is **GRANTED** with respect to plaintiff's claims for negligence and breach of fiduciary duty; and

2. The motion is **DENIED** in all other respects

.

BY THE COURT:

s/ James M. Munley
JUDGE JAMES M. MUNLEY
UNITED STATES DISTRICT COURT